Thank you, Your Honor. I'm Hope Del Carlo from the Oregon Law Center, representing the appellants, and it's Bowman v. Accredited Home Lenders. The case really has two focal points. So if the Court would prefer that I focus on the common law, contract-based part of this case, then I can do that. If you'd rather hear about the truth-in-lending aspect of this case, I can do that, or I can try to cover both. Well, speaking now only for myself, for me the issue is what does that initial sort of sketchy contract mean? Okay. Well, I'll start with the contract law argument then, and I think that the truth-in-lending part of the case will kind of flesh that out. Okay. So this case involves the Truth-in-Lending Act because it originally arose out of an abusive home mortgage, which is an all-too-common scenario in litigation these days. Under Oregon law, a specific performance of a contract is only available if the contract is definite and complete. So the main question here is, was that handwritten memorandum of essential terms a specifically enforceable contract? Oregon follows the objective theory of contract formation, which I think most states do, which means that the parties are not bound by what they think, they're bound by what they manifest, and usually that means in the form of a written document. So there's no question here that the parties subjectively believed when they left the mediation that day that they had a contract to settle, but the problem arose when the parties started trying to implement what they thought they had as an agreement. In the process, they recognized that, objectively speaking, essential pieces were missing that prevented them from implementing their deal. It's impossible to objectively implement the settlement described in the handwritten memo, and here's why. The terms are too indefinite. They're missing at least one critical detail. You can't tell from the memo of essential terms whether the plaintiffs agreed to pay accrued interest, and if so, how much and when was it due. And the critical language is in this little handwritten thing, reaffirmation of loan on existing terms period, first payment due on first payment due date under note after final documents period. But that's the difficult language. That's exactly it. And here's what causes that disputed provision to be indefinite. First, it doesn't define the term reaffirmation. The term itself implies that the loan has been disaffirmed. It implies that something has changed in a legal relationship between the parties already. It suggests that- It seems to me to mean we go back to our original deal and we affirm those terms. Well, for them to be reaffirmed, doesn't it mean that the terms have been disaffirmed, that they're somehow suspended? Not necessarily. It can just mean we're saying yes again. Sometimes you need two yeses to make a real yes. Well, to my mind, it seems like you have to have a no before you have the ability to reaffirm something. That would be something that you could argue to a jury. Okay. Well, I mean, there was an intervening act, which is that the Bowmans attempted to rescind. They provided a notice. That's true. But a court had not ruled. So it's a contested case. And so under Yamamoto, the rescission hadn't yet occurred. So rather than have a court say whether, in fact, the loan deal was rescinded, the parties decided to settle that. And in doing so, they retract the rescission. They reaffirmed the loan as it existed before. That seems the most natural reading of that language, as Judge Bea was suggesting. Right. It really was what we were thinking about in mediation, too, the fact that the loan had – we had sent a rescission letter, that we were – I think I have to take issue with you, though, in your statement that rescission was contested and, therefore, it hadn't taken effect yet. I think that it's clear from our reply brief that we – the appellants read Yamamoto somewhat differently. Yamamoto says that what's not automatic, what the court has the power to condition, is the public voiding of the security interest on the property. Yamamoto says this is a procedural aspect of TILA that the court is allowed to change. What Yamamoto doesn't say is that the substantive provisions of TILA rescission don't take effect immediately upon the sending of the letter. I mean, under Regulation Z, if you look at 12 CFR 226.15 and also 226.23, it talks about the effects of rescission. The effects are when the consumer rescinds the transaction by sending a letter, the security interest becomes void as a matter of theory, not in practice, because the lender hasn't actually released the lien yet. The second effect is that the consumer shall not be liable for any amount, including any finance charge. This is a substantive and unalterable provision of TILA according to the Yamamoto court. Let me think about Oregon law here for a minute. As I understand Oregon law on this aspect of contracts, it is that if a term is plain, then you simply read the term and that's the end of it. You don't allow extrinsic evidence to come in to contradict the plain meaning of the language. On the other hand, if the term is ambiguous, then in comes extrinsic language. So the question really in front of us is whether or not this language is ambiguous. The magistrate judge finds it's ambiguous and then says, OK, we've got to get extrinsic evidence in here. The district judge disagrees and says, no, I find these terms absolutely clear, and I don't think we need any extrinsic evidence. So the real question in front of us is whether this is ambiguous. And if one of us can come up with one plausible reading of the language and somebody else can come up with another plausible reading of the language, it sounds like we need to reverse and send back to the district judge and say, OK, that's a question of extrinsic evidence and go forward and put this to the jury. Is that my understanding of Oregon law properly? I believe so. I agree. Is my last one right? That is to say, if you're seeking specific performance, does it go to the jury or does it stay with the judge? I'm sorry, repeat that again? If you're seeking specific performance, does the case go to a jury or does it go to the judge? It's a legal question. I mean, there may be factual questions that lead up to the question of whether the contract was actually formed. So you can get specific performance, which is basically an equitable relief. You can get that in front of a jury in Oregon? I don't believe so. I think it's a legal question for the judge. So the judge, one way or the other, is going to say it's unambiguous and I don't look to extrinsic evidence, or the judge is going to say it is ambiguous and I look to extrinsic evidence, but one way or the other, the judge is going to do it? I believe so, unless there are factual determinations that need to be made about the facts that make it ambiguous. So you're back in front of Judge Marsh no matter what? I think it's been actually changed to a different, reassigned, but yes. Okay, but you're back in front of the district judge no matter what? Yes. I'm not sure if I made myself clear on the Truth in Lending Act part of it. Does the Court feel? Why does that matter? I think it matters because it's relevant to the issue of ambiguity. If the Truth in Lending Act is actually, if there's a self-executing component to the way truth in lending rescission works, if interest was not due from the Bowmans to the lenders at the moment we were sitting in mediation, it changes the context in which the agreement was made. You can read the agreement and say to yourself, what are the existing terms of this loan right now? Are the existing terms what the Bowmans signed at closing several, you know, two years before the mediation happened? Or are the existing terms as they've been modified by the fact that this loan has been rescinded under the Truth in Lending Act and they're no longer obligated to pay interest right now? I think that's where the Truth in Lending Act interlocks with the state contract issues. The Truth in Lending Act rescission notice created ambiguity about what relationship existed between the parties at mediation. But the settlement ended that ambiguity. The settlement was for the purpose of saying, regardless of what our claims were, whether they were rescinded or not, this is our deal. Except, Your Honor, that it incorporates that word existing terms. And in hindsight, you look at that memorandum and say to yourself, what are the existing terms? It's existing terms of the loans, which have to mean as they are written. Unless they've been changed by operation of federal law. Or, let me think about it this way, I mean, existing terms seems to me a fairly clear term. I mean, you just read the terms, there they are. But the question is not, is what are those terms? The question is, when do they come into effect? When do you start owing interest under those existing terms? That's another way of looking at it. Which brings us to your argument, well, what does reaffirm mean? I agree. You don't have to reach the Truth in Lending Act to decide that this is an ambiguous contract. That's true. Why don't we hear from the other side? And you've got a grand total of 10 seconds, but we'll give you more than that. That's okay. I think I can rest on what's been said. No, no, no, we'll let you respond. Okay. Thank you. Good morning, Your Honor. Catherine Salyer on behalf of the Lender Defendants. May it please the Court, counsel. After a full day of negotiating, plaintiffs and their counsel signed a handwritten memorandum, which I think one of you just referred to as an initial sketchy contract. But the point of that initial sketchy contract is that the parties that day agreed that it constituted the essential terms of an enforceable settlement. Who wrote that? I did, Your Honor. So, I mean, there's a rule about construing against the person who wrote it or the entity who wrote it. Does that apply here? I think it would, Your Honor. But all the parties were there. They were represented by counsel. They had an opportunity. If they thought there was an ambiguity in their language, they certainly had a full opportunity to clear up any ambiguity. Ms. Salyer, I'm from California, and we have rules of interpretation in California. We go to the plain meaning rule first. If there is an ambiguity, then we go to rules of interpretation of the contract. Is that similar in Oregon? It is, Your Honor. As consideration for this settlement, the plaintiffs were to be paid roughly $30,000 in attorney's fees and roughly $25,000 in damages. Now, were those damages because of a violation of the Federal statute? I think that was certainly what the parties believed that they were paying damages for was as a result. Technically, what TILA could have required here, had the case proceeded to trial, would be that the plaintiff would not have been entitled to pay finance charges. What we paid back to the plaintiffs was actually more than just the finance charges. We refunded part of the principal to them, and my point here was that the plaintiffs actually got more under this than they would have been entitled to had we proceeded to rescission, because as you know, under Yamamoto, Wilson, Legrone, a number of this Court's cases, when the Court grants rescission, it can condition that on repayment of the principal. So the Bowmans would have had to pay a credit and the other lenders back that principal. And under this, what happened was the Bowmans were going to be paid from a TILA insurance company approximately $25,000. So they got back money that they wouldn't necessarily have got back in the case of a rescission. And we think that's important here because what it shows is that both parties came to the settlement with a mind to compromise. They did compromise. But what wasn't part of that compromise was any change in those written terms. And that's precisely because if you look at the underlying loan documents, if you look at the underlying loan documents, when they referred to existing terms, if they wanted the payment to commence at some time other than the existing terms, they should have said so. And that's precisely because if you look at the underlying loan documents that can't be right because the existing terms provide for payment from the very beginning of the loan. Payment had been made from the very beginning of the loan. Right. But as I understand it, your argument is that the interest payment is due from the date the rescission letter was sent in, not from the very beginning of the loan. Well, yes and no. The only reason why interest is only due from the rescission period was because interest had been paid up to the rescission. Yeah, I know. I understand. But that means that you're not reinstating the terms of the loan because the terms of the loan say from the beginning of the payment period under the loan. And you're not doing that. Well, I say you're arguing for interest paying not from the beginning of the loan. In other words, you're not arguing for precise interest according to the precise terms of the loan. I think I am. The interest had been paid. The loan started in September of 2005. Interest had been or excuse me, September 2004. Interest had been paid until the notice of rescission was given approximately a year later. So that interest was paid. Then they stopped paying interest. And when they reaffirmed the loan, they stopped making any payments. I understand that. And so when we said payments to recommence on a certain date, the provision in the loan that governs when payment commences, when interest commences, and when maturity occurs, those are three separate provisions. And the only ones that the parties altered when they signed the agreement that day was the provision regarding when payments commence. I don't remember if you put the loan into the record. I don't remember. It is, Your Honor. It's about at SER, maybe the supplemental record, maybe 32, 33, 34. There are two different this was actually originally a first and a second. So there are two different promissory notes with slightly different language. Substantively, there's no difference. And so did the loans, I assume, had a payment schedule when the interest in principle was due, and then that was interrupted by the attempted rescission. Is that right? Yes. What happens is there was a payment that was due on the first date of every month. So technically, you know, from the lender's perspective, this loan was in default when we went to the mediation. From the plaintiff's perspective, the loan had been rescinded. But, you know, there's a, I guess, a legal difference of opinion there. The only thing that happened is that the payments hadn't been continued to make. But from the lender's perspective, that interest just kept stacking up and stacking up. Borrowers were making their payment into some sort of escrow account. Not an escrow account. Into Ms. DeCarlo's trust account. Okay. So a trust account. And then when the settlement was reached, at least from your perspective, although the time, there had been an interruption in payments to the lender, your thought was that everything to which the lender was entitled to under the loan agreement would be paid to the lender. Is that correct? Yes. Yes. And so this first payment due on first payment date due under note after final documents was a resumption of payments of what was due under the loan after the document, the final agreement had been signed. Is that? Precisely. What that was put there for was to determine when the plaintiff would start writing that monthly check again. It didn't alter what was due, how much was due, simply when the next monthly check would be sent to the lenders directly to, you know, satisfy the principle and interest that had accrued on the loan. I've got a question about what the district judge did. The district judge concludes that the terms are unambiguous and therefore he doesn't need to look to extrinsic evidence. Yet as the district judge goes through his interpretation of the language, he says, I'm now on page, it's ER 20, it's page 12 of his opinion or order. He says the party's communications and actions support my findings. Second, statements made by plaintiffs to the mediator. And third, failure to explain for approximately three weeks. All of that sounds to me like extrinsic evidence. Do you disagree that that's extrinsic evidence? I don't disagree that the judge relied on extrinsic evidence, but what I think is important is that if he can't, but if the terms are clear, what's he doing relying on extrinsic evidence? Plaintiffs offered it to him. That was the problem here. Well, no. As I understand Oregon law, we've heard it recited a couple of different times, if the terms are clear, you don't get to look to extrinsic evidence. Whether somebody offers it to you or not, you don't get to look at it. That's not exactly true, Your Honor. There is a case, Nixon v. Cascade Health Systems, and what that case says, and there's many more like it, they're cited in plaintiff's brief, but what, and I don't disagree with them, what the cases say is what the Court considers is the plain language and the intent. And to get there to that very initial determination, the Court can consider the circumstances of the parties. And so that sort of this initial layer of extrinsic evidence comes in. That's, I think, how all of the discussion about the TILA and the context of TILA becomes relevant as well. I understand that part, but the Court says the parties' communications and actions, the statements made by the plaintiffs. That's not circumstances of the parties that you just told me. In fact, I think we're in agreement. That's extrinsic evidence. And my problem is, well, I don't think the district judge can say simultaneously this is so clear that we don't need extrinsic evidence and then rely on extrinsic evidence to interpret the contract. I mean, that's the problem I have with what the district judge did. It's not? I guess I would submit that was appropriate under the Nixon v. Cascade Health Systems case. Because? Because what he was looking at was the circumstances of the party, the context in which the negotiations were occurring, and the discussions that they were having in terms of how they got to this language in the first instance. Even including statements made to the mediator? Well, that was the circumstances of the parties as of the time they were settling. I think those statements are. Okay. Mr. Cronin. From defendants' perspective, plaintiffs wished to be excused from their agreement because they had a subjective miscalculation as to the ultimate financial impact of the terms reaffirmation on existing terms. The district court found that this subjective understanding did not preclude formation, nor did it render this contract ambiguous. Are there any further questions? Okay. Thank you very much. I submit. Would you like a minute for response? No, I'm okay. Okay. Thank both sides for their useful argument. In the case of Bowman v. Accredited Home Lenders, that case is now submitted for decision. The next case is Navarette v. Nike.
judges: Graber, Fisher, Smith M.